**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                   Case No. 4:09-cr-9-SPM/WCS-1

KELVIN LANEER BURTON,

        Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTIONS TO SUPPRESS EVIDENCE**

NOW PENDING before the Court is Defendant's Motion to Suppress (doc. 93) and Defendant's Second Motion to Suppress (doc. 107). The Government has filed Responses in Opposition (docs. 94, 108). On March 10, 2010, the Court conducted a hearing on Defendant's Motions. For the reasons set forth below, Defendant's Motions will be denied.

I.     BACKGROUND

Defendant and his co-defendants were the subjects of a narcotics investigation conducted by the Drug Enforcement Agency (DEA) in Tallahassee, Florida. DEA Case Agent Gregory Millard arranged for Florida Department of Law Enforcement Special Agent Grant Geyer, who specializes in GPS trackers,

audiovisual enhancement, and electronics, to install a magnetic tracking device on January 27, 2009, on a Chevrolet Avalanche which was registered to the Defendant, but was frequently driven by his co-defendant James Gibson. A magnetic tracking device had previously been placed on the vehicle in the fall of 2008, but was removed after failing to provide law enforcement with any useful case information. Law enforcement agents had reason to believe that James Gibson was involved in criminal drug activity. Informants had advised the agents that they had been supplied cocaine by James Gibson. Officers were aware that James Gibson sold drugs out of multiple premises in the Tallahassee area, and Agent Millard had witnessed James Gibson at these locations during surveillance. The utilities at one of the said premises were registered to the Defendant. Moreover, DEA agents were aware of a warehouse, ostensibly a pottery business, in the Ocala, Florida, area associated with co-defendant Leondray Gibson, brother of James Gibson, where broken open false concrete cinder blocks were discovered containing residue and trace amounts of cocaine.

      The installation of the magnetic tracker onto the Chevrolet Avalanche did not involve entry into the interior of the vehicle, or tampering with the vehicle's engine components. The device was placed on the undercarriage of the vehicle. The device does not contain a microphone, and does not transmit conversations or images. The device was installed outside Defendant's residence, in a neighborhood

of medium-sized starter homes on small lots. Photographic evidence revealed that a vehicle the size of the Chevrolet Avalanche parked in the exposed, unfenced driveway, as was the Chevrolet Avalanche at the time of the installation, would take up most of the driveway and allow for little distance between the vehicle and the public sidewalk and street. Agent Geyer testified that he placed the magnetic tracker onto the vehicle from the sidewalk within two to three minutes.

On February 28, 2009, Agent Millard contacted Investigator Douglas Haskell of the Madison County Sheriff's Office and informed him that law enforcement had tracked the Chevrolet Avalanche traveling to the Miami area, where it remained for a short time before beginning an anticipated return trip which would bring it through Madison County on its way back to Tallahassee. Because of the trip to Miami and the quick turnaround time, Agent Millard suspected that the vehicle would be carrying drugs. Agent Millard advised Deputy Haskell that he would need to determine his own probably cause before initiating a stop of the vehicle as it passed through Madison County.

Later that evening, Deputy Haskell, in a marked Sheriff's patrol car, and Sheriff David Harper, in an unmarked Ford F-150 pickup truck, were stationed near Interstate 10 in Madison County. As the Chevrolet Avalanche passed through Madison County headed west toward Tallahassee, Harper traveled behind it and watched as the Avalanche failed to maintain a single lane and crossed the white fog

line into the rumble strip before overcorrecting and crossing into the dividing line. Harper radioed the marked control unit driven behind him by Deputy Haskell and told him of the traffic infraction. Haskell then sped up so that he would be traveling behind the Chevrolet Avalanche and observed the vehicle's failure to maintain a single lane and travel at an unsafe distance behind a semi truck. Deputy Haskell believed that the driving behavior was consistent with driving under the influence of an intoxicant and signaled his blue lights for the vehicle to pull over.

      Once the vehicle was stopped, Deputy Haskell asked the driver to exit the vehicle, and then realized that the Defendant was driving, and not, as was suspected, co-defendant James Gibson. A recording of the stop created by the automatic in-car camera system reveals that the stop lasted several minutes. Throughout the traffic stop, the Defendant appeared nervous and fidgety, and continually looked over his shoulder during his conversation with Deputy Haskell. Deputy Haskell took the Defendant's driver's license and made a radio call into headquarters for them to run a check on the Defendant's information. Deputy Haskell also called for backup. Next, Deputy Haskell and the Defendant returned to the front of the vehicle for the Defendant to retrieve the vehicle registration. Each time Deputy Haskell approached the vehicle, he detected the distinct smell of burned marijuana. After the Defendant was unable to locate the vehicle registration, the two returned to the back of the vehicle. Without returning the Defendant's

license, Deputy Haskell asked the Defendant for his permission to search the vehicle. Twice, the Defendant offered his consent to the search. Upon his search of the vehicle, Deputy Haskell found two kilos of cocaine inside a speaker box.

II.  DISCUSSION

Defendant argues that all evidence seized pursuant to his arrest should be suppressed because both the placement of the tracking device on his vehicle and the subsequent traffic stop violated his constitutional rights under the Fourth Amendment. The Court will discuss each of these matters in turn.

   A. Tracking Device

The Fourth Amendment protects against invasions of one's legitimate expectation of privacy. "Expectation of privacy analysis is especially appropriate in cases like the instant one which involve an individual's rights with respect to an automobile. " United States v. Michael, 645 F.2d 252, 256 (5th Cir. 1981). "One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. A car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and its contents are in plain view." Cardwell v. Lewis, 417 U.S. 583, 590 (1974) (plurality opinion). "A person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." United States v. Knotts, 460 U.S. 276,

281 (1983).

In <u>United States v. Knotts</u>, 460 U.S. 276 (1983), the Supreme Court held that the warrantless placement of a beeper tracking device inside a chloroform container which allowed law enforcement to track the Defendant's movements did not implicate the Fourth Amendment, because there was no violation of a legitimate expectation of privacy of the Defendant. In <u>United States v. Michael</u>, 645 F. 2d 252 (5th Cir. 1981), the Fifth Circuit Court of Appeals[1] similarly rejected a defendant's challenge to the admission of evidence where DEA agents had installed a beeper on his van. The Court held that "the minimal intrusion involved in the attachment of a beeper to Michael's van, parked in a public place, was sufficiently justified so as to satisfy any of Michael's fourth amendment expectation of privacy concerns." <u>Michael</u>, 645 F.2d at 256.

Applying the foregoing standards to the facts of this case, it is clear that the Defendant's request for operation of the Fourth Amendment exclusionary rule because of law enforcement's use of a GPS tracking device on the Defendant's vehicle to trace the Defendant's movements must be denied. First, the Defendant had no legitimate expectation of privacy in the movements of his automobile on public roads. The Defendant "voluntarily conveyed to anyone who wanted to look

---

[1] "Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding upon this court unless and until they are overruled by the Eleventh Circuit sitting en banc." <u>United States v. Blasco</u>, 702 F.2d 1315, 1325 n.22 (11th Cir. 1983).

the fact that he was traveling over particular roads in a particular direction, the fact of whatever stops he made, and the fact of his final destination when he exited from public roads onto private property." Knotts, 460 U.S. at 281-82. There is no Fourth Amendment violation for using a tracking device as a substitute for visual surveillance where "'[t]he substitute . . . is for an activity, namely following a car on a public street, that is unequivocally not a search within the meaning of the amendment.'" United States v. Pineda-Moreno, 591 F.3d 1212, 1216 (9th Cir. 2010) (citing United States v. Garcia, 474 F.3d 994, 997 (7th Cir. 2007)).

Moreover, the intrusion caused by affixing the magnetic tracking device to the Defendant's vehicle is minimal. The device was not placed on the interior of the vehicle, and required no dismantling, opening, or otherwise significant disturbance of the vehicle to attach or activate it. The Chevrolet Avalanche was not fenced in, kept inside a garage, or otherwise shielded from contact with any member of the public. In fact, the device was placed under the vehicle from a public sidewalk.

Lastly, even if the Court were to find that the installation and employment of the tracking device on the Defendant's vehicle raised Fourth Amendment concerns, "the DEA agents' reasonable suspicion that [the operator of the vehicle] was engaged in criminal activity justified the placement and monitoring of the beeper." Michael, 645 F.2d at 258. Here, law enforcement had received information from multiple sources that the regular driver of the vehicle was a distributor of cocaine.

Visual surveillance of the vehicle revealed that it was parked at multiple locations of suspected drug activity. "The actual installation of the beeper was much less intrusive than the typical stop and frisk." Id. The legitimate, supported, and reasonable suspicions of law enforcement agents in this case justified the minimal intrusion of affixing the magnetic tracking device to the outside of the vehicle while parked adjacent to the public sidewalk, and the tracking of the movements of the vehicle on public roads via the tracking device, where such movements could have permissibly been monitored by means of visual surveillance.

B. Traffic Stop and Search of Vehicle

The Defendant also moves for suppression of the evidence seized at the time of his traffic stop on the grounds that the traffic stop was unconstitutionally lengthy, the Defendant was not free to leave because the officer had kept his license, and therefore the subsequent search of the vehicle was rendered invalid. "Traffic stops qualify as seizures under the Fourth Amendment." United States v. Ramirez, 476 F.3d 1231, 1236 (11th Cir. 2007). A traffic stop "must last no longer than is necessary to effectuate the purpose of the stop." United States v. Pruitt, 174 F.3d 1215, 1220 (11th Cir. 1999) (internal citations omitted). A police officer may lengthen the detention for questioning beyond that related to the initial stop in two circumstances: (1) when officer has an objectively reasonable suspicion that criminal conduct has been or is occurring, and (2) when the initial stop becomes a

consensual encounter. See Ramirez, 476 F.3d at 1237. Courts look to the totality of the circumstances when determining whether a stop has become consensual.

Applying the legal standards as expressed by the Supreme Court and the Eleventh Circuit Court of Appeals on this issue, it is clear that the traffic stop in this case was not unconstitutional. First, it is irrelevant that the officers suspected the vehicle of being involved in drug activity prior to pulling the Defendant over, so long as the officers had probable cause to believe that a traffic violation had occurred, as has been documented here. "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Whren v. United States, 517 U.S. 806, 813 (1996).

Additionally, the traffic stop conducted by Deputy Haskell was not unreasonably, unusually, or outrageously lengthy, lasting fewer than twenty minutes before the Defendant gave his consent to the search of the vehicle. Throughout this time, the officer was engaged in administrative matters pertinent to the initial stop, such as checking the Defendant's driver's license, waiting for the Defendant to find his vehicle registration, and waiting for backup, which is standard procedure as a precaution against potential violence from drivers.

Moreover, even if the Court were to find that Deputy Haskell lengthened the traffic stop, such lengthening was not unconstitutional because he had an objectively reasonable suspicion that criminal conduct had occurred and because

the stop had become a consensual encounter. Twice, upon approaching the vehicle, Deputy Haskell had detected the aroma of burned marijuana, and this justified continuing the initial stop in order to gain additional information from the Defendant. Additionally, the stop had become consensual. Although Deputy Haskell had not yet returned the Defendant's driver's license, this fact is not alone determinative of whether the stop had become consensual. There was cooperative banter, mostly relaxed and even lighthearted, back and forth between the officer and the Defendant regarding safe driving practices, the circumstances of the Defendant's visit to the Miami area, and the Defendant's lack of sleep. Based on the totality of the circumstances, the Defendant had consented to the interview, and appeared to have little or no desire to quickly terminate the encounter.

Lastly, the search of the vehicle was not unconstitutional, as the Defendant twice affirmed his consent to the search when Deputy Haskell asked if he could search the vehicle. Even if the Defendant had not consented to the search, the search would be justified by the officer's probable cause that criminal activity had occurred as evidenced by the odor of marijuana emanating from the interior of the vehicle.

III. CONCLUSION

Therefore, upon consideration, it is hereby **ORDERED AND ADJUDGED** that

Defendant's Motions to Suppress Evidence  (docs. 93, 107) are DENIED.

**DONE AND ORDERED** this <u>sixteenth</u> day of March, 2010.

       *s/ Stephan P. Mickle*
       Stephan P. Mickle
       Chief United States District Judge